**DISTRICT OF OREGON**

**F I L E D**

**February 18, 2026**

**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

*Teresa H. Pearson*

TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 23-60512-thp7 |
| Karen Anne Morgan, | |
| Debtor. | |
| Candace Amborn, Trustee, | Adv. Proc. No. 24-06062-thp |
| Plaintiff, | MEMORANDUM DECISION[1] |
| v. | |
| Karen Anne Morgan and Bradley Jonathan Riggs, | |
| Defendants. | |

### <u>Introduction</u>

Chapter 7 trustee and plaintiff Candace Amborn (the "Trustee") asserts in this adversary proceeding that debtor and defendant Karen Anne Morgan engaged in fraudulent transfers or preferences when she transferred funds and property to her domestic partner, defendant Bradley

---

[1] This disposition is specific to this case.  It may be cited for whatever persuasive value it may have.

Jonathan Riggs.  The Trustee seeks avoidance of those transfers, turnover to the estate of the property and funds transferred, and a money judgment.

The court held a one-day trial in this case, concurrently with another adversary proceeding[2] in this same bankruptcy case.  The Trustee appeared through her counsel Learon J. Bird.  Defendant Ms. Morgan appeared through her counsel Keith Y. Boyd.  Defendant Mr. Riggs appeared through his counsel Natalie C. Scott.  The plaintiffs in the other adversary proceeding, Larry and Susan Perkett, appeared through their counsel, Erik J. Glatte.

Ms. Perkett, Ms. Morgan, and Mr. Riggs testified at trial.  The court admitted Exhibits 1-12,[3] 101-114,[4] 201-208,[5] and 301-303.[6]

For the reasons set forth below, the court finds in favor of the Trustee.

## Procedural History

Ms. Morgan filed her voluntary chapter 7 bankruptcy case on March 27, 2023.[7]  Candace Amborn was appointed as the chapter 7 trustee.[8]

The Trustee filed her adversary proceeding against Ms. Morgan and Mr. Riggs on September 4, 2024.[9]  The Trustee amended that complaint twice.[10]  Ms. Morgan filed an answer

---

[2] *Perkett v. Morgan*, adv. proc. no. 23-06032-thp.

[3] ECF No. 73, filed Jan. 9, 2026.

[4] ECF No. 72, filed Jan. 9, 2026, in adv. proc. case no. 23-06032-thp, and using replacement Exh. 110, filed at ECF No. 75 on Jan. 16, 2026, in adv. proc. no. 23-06032-thp.

[5] ECF No. 71, filed Jan. 8, 2026, in adv. proc. case no. 23-06032-thp, and using replacement Exh. 206 submitted on paper at trial, later filed at ECF No. 79 on Jan. 28, 2026, in adv. proc. no. 23-06032-thp.

[6] ECF No. 75, filed Jan. 9, 2026.

[7] Chapter 7 Voluntary Petition, ECF No. 1, filed Mar. 27, 2023, in bankr. case no. 23-60512-thp7.

[8] Notice of Chapter 7 Bankruptcy Case, ECF No. 4, filed Mar. 27, 2023, in bankr. case no. 23-60512-thp7.

[9] Complaint for Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. §§ 548(a), 550(a), 544, and ORS 95.230, and for Turnover of Property Under 11 U.S.C. § 542(a), ECF No. 1, filed Sept. 4, 2024.

[10] First Amended Complaint for Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. §§ 542, 544, 547, 548, 550, and ORS 95.230, and for Turnover of Property Under 11 U.S.C. § 542(a), ECF No. 25, filed Feb. 21, 2025; Second Amended Complaint for Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. §§ 542, 544, 547, 548, 550,

to the original complaint.[11]  Later, Ms. Morgan filed a motion to dismiss the first amended complaint, which the court deemed to be a motion to dismiss the second amended complaint.[12] The court denied the motion to dismiss, but held that Ms. Morgan's answer to the original complaint would be deemed to be an answer to the second amended complaint.[13]  Mr. Riggs filed an answer to the first amended complaint, which the court also deemed to be an answer to the second amended complaint.[14]

The Trustee then filed a motion for summary judgment.[15] Mr. Riggs opposed the motion and filed a cross-motion for summary judgment.[16]  At the hearing on summary judgment, the trustee withdrew her fifth claim for relief in the second amended complaint.[17]  The court denied both motions for summary judgment.[18]

## <u>Jurisdiction</u>

This court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, and authority to decide these claims as core proceedings under 28 U.S.C. § 157(b)(2)(E), (F) and (H).[19]

---

and ORS 95.230, and for Turnover of Property Under 11 U.S.C. § 542(a), ECF No. 36, filed Mar. 28, 2025.

[11] Defendant Morgan's Answer & Affirmative Defenses to Plaintiff's Complaint, ECF No. 12, filed Oct. 22, 2024.

[12] Motion to Dismiss as to Defendant Karen Morgan Only, ECF No. 28, filed Feb. 25, 2025; Order Granting Plaintiff's Motion to File Second Amended Complaint, ECF No. 35, entered Mar. 28, 2025.

[13] Minute Order and Record of Proceeding, ECF No. 41, entered May 7, 2025.  The court also struck paragraph 26 of Ms. Morgan's answer.  *Id.*

[14] Defendant Riggs' Answer & Affirmative Defenses to Plaintiff's First Amended Complaint, ECF No. 29, filed Feb. 25, 2025; Minute Order and Record of Proceeding, ECF No. 41, entered on May 7, 2025.

[15] Plaintiff's Motion for Summary Judgment, ECF No. 43, filed May 13, 2025.

[16] Defendant Riggs' Response in Opposition to Trustee Motion for Summary Judgment & Cross-Motion for Summary Judgment, ECF No. 48, filed Jun. 20, 2025.

[17] Record of Proceeding, ECF No. 55, filed Sept. 10, 2025.

[18] Order Denying Motions for Summary Judgment, ECF No. 56, entered Sept. 12, 2025.

[19] Plaintiff asserted that these claims were core proceedings under 28 U.S.C. § 157(b)(2)(E), (H), and (O), but this was not quite correct.  Second Amended Complaint, ECF No. 36, filed Mar. 28, 2025, ¶ 4.  Nonetheless, defendants did not dispute jurisdiction.  Defendant Morgan's Answer & Affirmative Defenses to Plaintiff's Complaint, ECF No. 12, filed Oct. 22, 2024, ¶ 3, made applicable by Minute Order and Record of Proceeding, ECF No. 41, entered May 7, 2025;

## Facts

After carefully considering all the evidence presented as a whole and the credibility of each of the witnesses, the court makes the following findings of fact:

1.      The Perketts have lived on property on Jones Road in White City, Oregon (the "Perketts' Property"), since 1962.  They live and operate a business on the Perketts' Property.

2.      The Perkett's original neighbor on Jones Road was Ms. Morgan's mother. Ms. Morgan's mother granted an easement to the Perketts over her property (the "Jones Road Property") for access to the Perketts' Property.

3.      In 2015, sometime after Ms. Morgan acquired an interest in the Jones Road Property from her mother, Ms. Morgan opposed use of the easement over the Jones Road Property to access the Perketts' Property.

4.      In 2016, Ms. Morgan obtained sole interest in the Jones Road Property after her mother passed away.

5.      Ms. Morgan and the Perketts then engaged in litigation in Jackson County, Oregon (including many appeals) and other land use disputes for many years.  This litigation and the disputes were about the easement on the Jones Road Property and each of the parties' respective behavior and use of the easement.

6.      The Perketts filed a notice of lis pendens on the Jones Road Property almost immediately after filing their litigation.

7.      Ms. Morgan testified that she did not know that the easement contained an attorney fee provision and did not give much thought to the fact that if she lost the litigation with the Perketts she might be liable for the Perketts' attorney fees.  The court did not find that testimony credible.

---

Defendant Riggs' Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, ECF No. 29, filed Feb. 25, 2025, ¶ 3, made applicable by Minute Order and Record of Proceeding, ECF No. 41, entered May 7, 2025.

8.     Ms. Morgan and Mr. Riggs have lived together since 2015.  Mr. Riggs lived with Ms. Morgan on the Jones Road Property.

9.     On December 19, 2019, Ms. Morgan wired $5,000 to the Deschutes County Title Company for the purchase of property located at 54376 Oil Dri Road in Christmas Valley, Oregon (the "Christmas Valley Property").

10.     On January 9, 2020, Mr. Riggs wired $96,541.48 to the Deschutes County Title Company for the purchase of the Christmas Valley Property.

11.     On January 13, 2020, a settlement statement was prepared for purchase of the Christmas Valley Property.  The settlement statement shows a deposit of $5,000, a loan of $165,000, and funds to close of $96,541.48 were paid to purchase the property.

12.     Both Ms. Morgan and Mr. Riggs signed the loan documents for the $165,000 purchase money loan for the Christmas Valley Property.

13.     On, January 13, 2020, a Statutory Warranty Deed was recorded in Lake County, Oregon, in which third-party grantors conveyed the Christmas Valley Property to "Bradley Jonathan Riggs and Karen Anne Morgan, not as tenants in common but with the right of survivorship."   The deed states that the consideration was $265,000.

14.     Ms. Morgan testified that she never paid any money for the purchase of the Christmas Valley Property, but instead that Mr. Riggs wired $5,000 to her on December 20, 2019, and that she wired those same funds out to the title company on December 23, 2019.  This testimony was not credible and is contradicted by the written bank and transaction records.

15.     Ms. Morgan's bank statement does show an incoming wire on December 20 and an outgoing wire on December 23, each in the amount of $5,000.  However, there is no evidence that those wires related to purchase of the Christmas Valley Property.  Ms. Morgan's bank statement also shows another outgoing wire from her account on December 19, 2019, in the amount of $5,000.  The wire details for that wire transfer and the title company's records show that the December 19 wire, not the December 23 wire, provided the $5,000 that was applied to the purchase of the Christmas Valley Property.  There is no evidence that Mr. Riggs was the

source of the $5,000 that Ms. Morgan paid on December 19 to purchase the Christmas Valley Property.

16.     Ms. Morgan testified that, despite the language of the deed, she was not actually an owner of the Christmas Valley Property and that it was Mr. Riggs' property.  She testified that she was only put on the deed to have a survivorship interest.  She also testified that she never put a dime into the purchase of the Christmas Valley Property.  The court did not find any of that testimony to be credible.

17.     Mr. Riggs testified that he decided that Ms. Morgan would be listed on the deed to the property so that she could inherit the property if he dies first.  The court did not find that testimony to be credible.

18.     Mr. Riggs had cows when he and Ms. Morgan purchased the Christmas Valley Property.

19.     Ms. Morgan has lived at the Christmas Valley Property since at least July 2020 and still lived there at the time of trial in this adversary proceeding.

20.     The litigation between the Perketts and Ms. Morgan in Jackson County ultimately went to a multi-day bench trial in December 2020.

21.     On February 25, 2021, the judge in the Jackson County case issued his ruling in the dispute between the Perketts and Ms. Morgan.  Ms. Morgan prevailed on some of the claims and the Perketts prevailed on other claims.  The ruling provided that any party claiming costs or fees could file a request pursuant to ORCP 68.

22.     Ms. Morgan testified that she never saw this ruling until after the bankruptcy case was filed.  The court did not find that testimony credible.

23.     On April 28, 2021, the Perketts obtained a general judgment against Ms. Morgan for $19,600 plus post-judgment interest at 9% interest per annum.  The principal amount of the judgment was the net amount Ms. Morgan owed to the Perketts after offsetting the amounts the Perketts owed to Ms. Morgan.  The judgment also provided for attorney fees and costs to be determined in accordance with ORCP 68.

24.    On May 11, 2021, the Perketts' counsel filed his statement for attorney fees and costs, requesting a total amount of $180,818.86.

25.    Ms. Morgan testified that she did not see the Perkett's statement for attorney fees and costs until the morning of trial in this adversary proceeding. The court did not find that testimony credible.

26.    On May 11, 2021, Ms. Morgan's counsel also filed his declaration in support of an award of attorney fees in the amount of $31,411.25, plus costs of $1,610.00.

27.    On May 13, 2021, Ms. Morgan appealed the general judgment.

28.    On May 19, 2021, Ms. Morgan prepared and filed Articles of Organization for Whispering Oaks Farms, LLC. Ms. Morgan and Mr. Riggs are each listed as members of the limited liability company. Ms. Morgan electronically signed the Articles of Organization under the penalty of perjury.

29.    Ms. Morgan testified that creation of the limited liability company was a mutual decision between her and Mr. Riggs, but that she deferred to him because the Christmas Valley Property was his property and he wanted it in a limited liability company. The court did not find this testimony credible.

30.    Mr. Riggs testified that the limited liability company was set up for his cattle. The court did not find this testimony convincing, given that Mr. Riggs had cattle on the Christmas Valley Property since the time Ms. Morgan and Mr. Riggs acquired the property.

31.    Ms. Morgan and Mr. Riggs intended to transfer the Christmas Valley Property to Whispering Oaks Farms, LLC, when the limited liability company was formed.

32.    Ms. Morgan testified that the formation of Whispering Oaks Farms, LLC, had nothing to do with entry of the general judgment and the appeal filed less than a week before. The court did not find this testimony credible.

33.    Mr. Riggs testified that the formation of Whispering Oaks Farms, LLC, had nothing to do with entry of the general judgment or getting the Christmas Valley Property out of Ms. Morgan's name. The court did not find this testimony credible.

34.    On June 10, 2021, Ms. Morgan and Mr. Riggs conveyed the Christmas Valley Property to Whispering Oaks Farms, LLC, by statutory warranty deed recorded in Lake County, Oregon.  The consideration stated in the deed is "other compensation in excess of $10.00." Ms. Morgan prepared the deed, and Ms. Morgan and Mr. Riggs both signed it.

35.    Ms. Morgan testified that listing herself as a member of the limited liability company was a mistake, and that she started preparing the limited liability company forms for her turkey business but ended up finishing the forms for Mr. Riggs to use.  She testified that she "immediately, as soon as I possibly could" corrected the error on June 11, 2021.  The court did not find this testimony credible.

36.    On July 12, 2021, the judge in the Jackson County case held a hearing on the attorney fee issues and took the matter under advisement.

37.    On July 26, 2021, Ms. Morgan sold the Jones Road Property to Kirsten Logan and Christopher Logan, her daughter and son-in-law.

38.    Ms. Morgan claims she made the deal to sell the property to her daughter and son-in-law sometime before May 2021.

39.    As part of the closing of the property, Ms. Morgan gifted equity in the Jones Road Property in the amount of $11,795.00 to her daughter and son-in-law.

40.    No payment was made to the Perketts on the general judgment from closing of the sale of the Jones Road Property, even though the general judgment was a judicial lien against the property.

41.    Upon closing, the title company disbursed the net sale proceeds of $156,742.55 to Ms. Morgan.  Ms. Morgan transferred the $156,742.55 in proceeds to Mr. Riggs.

42.    Ms. Morgan testified that she told the title company to pay the Perketts from the sale of the Jones Road Property.  She also testified that she did not read the estimated settlement statement or closing statement (even though she signed both documents) and therefore did not know that the Perketts were not going to be paid from closing.  The court did not find that testimony credible.

43.    Ms. Morgan testified that she thought the Perketts would be paid in full at closing of the sale of the Jones Road Property and that she would not owe them any more money after closing, even though the parties' competing claims for attorney fees and costs were unresolved. The court did not find that testimony credible.

44.    The Perketts did not know about the sale of the Jones Road Property when it occurred.  They knew Ms. Morgan's daughter was renting the Jones Road Property but did not know she had purchased it.  They did not learn about the sale until sometime later in 2021.

45.    On October 4, 2021, in the Jackson County case the Perketts obtained a supplemental judgment against Ms. Morgan for attorney fees and costs in the amount $66,889.64 plus post-judgment interest at 9% per annum.

46.    On October 13, 2021, Ms. Morgan appealed the supplemental judgment.

47.    Ms. Morgan testified that she did not know when she became aware of the supplemental judgment and did not know about the appeal when her lawyer filed it.  The court did not find this testimony credible.

48.    On or about October 14, 2021, the Perketts' counsel sent a notice of demand to pay the supplemental judgment to Ms. Morgan.

49.    On November 2, 2021, the Perketts sought to take a judgment debtor examination of Ms. Morgan.

50.    Ms. Morgan testified that she did not know that the Perketts were trying to take her judgment debtor examination.  The court did not find this testimony credible.

51.    On March 17, 2022, in the Jackson County case, the Perketts obtained another supplemental judgment against Ms. Morgan for $12,198.75 plus post-judgment interest at 9% for attorney fees and costs.

52.    On September 29, 2022, Whispering Oaks Farms, LLC, was administratively dissolved by the Oregon Secretary of State.

53.    On October 21, 2022, the Perketts filed a satisfaction of the general judgment entered on April 28, 2021, in the amount of $19,600, together with costs and accrued interest in

the Jackson County case. Ms. Morgan did not pay this amount. Instead, the payment on the general judgment was made to the Perketts by the title company who closed the sale of the Jones Road Property from Ms. Morgan to her daughter and son-in-law. The title company did not pay the two supplemental judgments.

54.    The two supplemental judgments remain unpaid.

55.    Ms. Morgan has never paid any money to the Perketts on any of judgments.

56.    On November 16, 2022, the Perketts filed complaint alleging claims for fraudulent transfer against Ms. Morgan in Lake County, Oregon.

57.    On November 23, 2022, the Perketts filed an amended complaint alleging claims for fraudulent transfer in the Lake County case, adding Whispering Oaks Farms, LLC, as an additional defendant.

58.    On January 25, 2023, Ms. Morgan filed a legal brief in the Lake County case. In that brief, she stated: "June 09, 2021 after entry of the April 28, 2021 GENERAL JUDGMENT AND MONEY AWARD, Defendant Karen Anne Morgan was free to sell her interest in the [Christmas Valley Property]." This evidence undercuts Ms. Morgan's claim that she was not an owner of the Christmas Valley property.

59.    Ms. Morgan attempted to explain this statement from the legal brief by asserting that she was referring to a "generic interest," and that if she had an interest in the property, she could do something with it. She also claimed that she wrote this legal brief in a hurry using information a paralegal friend gave her to cut and paste. The court did not find Ms. Morgan's explanation credible.

60.    Ms. Morgan prepared, and on February 7, 2023, Ms. Morgan filed four documents with the Oregon Secretary of State, in the following order:

    a.    Articles of Amendment for Whispering Oaks Farms, LLC (filing # ending in -666) showing that Bradley Jonathan Riggs is the sole member of the LLC, and that the date of adoption of the amendment was "June 11, 2021."

b.    Information Change for Whispering Oaks Farms, LLC (filing # ending in -710), showing "Karen Anne Morgan, no longer member" and "Karen Anne Morgan, Manager."

c.    Information Change for Whispering Oaks Farms, LLC (filing # ending in -718), showing "Karen Anne Morgan, resigned membership" and "Karen Anne Morgan, Manager."

d.    Articles of Dissolution filed for Whispering Oaks Farms, LLC, listing Bradley Jonathan Riggs as "President & Sole Member."

61.    Ms. Morgan testified that she prepared the Articles of Amendment (filing # ending in -666) and the Information Change (filing # ending in -718) on June 11, 2021, and gave them to Mr. Riggs to file. Ms. Morgan testified that instead of filing these documents, Mr. Riggs just put them in a desk drawer. Mr. Riggs testified that he left them on the desk at home at the Christmas Valley Property. Mr. Riggs claimed he did not understand the documents needed to be filed with the Secretary of State. However, he acknowledged the fact that the forms required a fee for filing. The court does not find any of this testimony credible.

62.    Ms. Morgan attempted to explain the statement in the Information Changes that she was "no longer [a] member" and "resigned membership" by asserting she was never really a member and that she thought this was how she needed to fix her mistaken original statement that she had a membership interest in the limited liability company. The court did not find those explanations credible.

63.    Ms. Morgan and Mr. Riggs were each 50% owners of Whispering Oaks Farms LLC, from its formation until the time that Ms. Morgan gave up her membership interest on February 7, 2023.[20] Ms. Morgan's relinquishment of her membership interest had the effect of transferring that interest to Mr. Riggs, who was the only remaining member.

---

[20] The original judge assigned to this case ruled in the concurrent adversary proceeding that, as a matter of law, the transfer of membership could not be effective as to anyone outside of Ms. Morgan and Mr. Riggs until after these documents were filed with the Oregon Secretary of State on February 7, 2023. Memorandum Decision on Summary Judgment, ECF No. 45, filed on

64.    Mr. Riggs testified that he did not know that the Perketts had a judgment against Ms. Morgan until February of 2023.  The court did not find that testimony credible.

65.    Whispering Oaks Farms, LLC, never had any assets other than the Christmas Valley Property.

66.    Ms. Morgan testified that Whispering Oaks Farms, LLC, filed articles of dissolution because limited liability companies may only appear in court through an attorney and that dissolving the company would allow Mr. Riggs to represent himself in the Perketts' fraudulent transfer case.

67.    On February 8, 2023, Whispering Oaks Farms, LLC, conveyed the Christmas Valley Property to Mr. Riggs by statutory warranty deed recorded in Lake County, Oregon.  The deed was not prepared by an attorney.  The deed states that "[t]he true consideration for this conveyance is Grantee's waiver of all attorney fees Grantee paid on behalf of and still owed Grantee by Karen Anne Morgan for her legal defense in Perkett -vs- Morgan, Jackson County Circuit Court Case Number 17CV24682, EXCEPT:  Deed of Trust File Number DE8755 and Real Property Taxes, a lien not yet due and payable, to be paid by Grantee."  Mr. Riggs signed the deed on behalf of Whispering Oaks Farms, LLC.

68.    Mr. Riggs testified that this transfer was done so he could become an intervenor in the Lake County case.  He claimed it had nothing to do with keeping the property away from the Perketts or to create hurdles for them.  The court did not find this testimony credible.

69.    On February 13, 2023, Mr. Riggs submitted his declaration to the Lake County Circuit Court.  Ms. Morgan prepared the declaration.  Mr. Riggs' declaration states "I liked the name WHISPERING OAKS FARMS, LLC, so I offered and Defendant, Karen Anne Morgan, accepted my proposal to waive part of her debt to me for paying her attorney fees in exchange she would resign her membership in WHISPERING OAKS FARMS, LLC, and remain on as

---

September 30, 2024, in *Perkett v. Morgan*, adv. proc. no. 23-06032-thp, pp. 7-9.  This judge agrees with that ruling of law.  Separate from that ruling, however, this court also finds that as a matter of fact, Ms. Morgan had a membership interest when Whispering Oaks Farms, LLC, was formed and did not give up her membership interest until February 7, 2023.

manager and agreed to continue helping me run my ranch. However, she errored leaving herself as Registered Agent and Member. So, the next day after the recording of my Statutory Warranty Deed #2021-001189, June 11, 2021, I took administrative action, amending the Articles of Organization to formally remove Defendant, Karen Anne Morgan, from WHISPERING OAKS FARMS, LLC (See, Exhibit B), reduce her position to that of my manager, then I dissolved WHISPERING OAKS FARMS, LLC and re-titled the real property from WHISPERING OAKS FARMS, LLC to myself as authorized by Oregon Limited Liability Act . . . "

70.    On March 27, 2023, Ms. Morgan filed bankruptcy.

71.    On October 23, 2023, Ms. Morgan's counsel filed a proof of claim on behalf of "Brad Riggs" for $145,707.98 for "Money loaned."  The proof of claim asserts that Mr. Riggs paid attorney fees of $302,433.79 and received payment of $156,725.81 from the proceeds of the sale of the Jones Road property, to calculate the net balance owed of $145,707.98.

72.    Mr. Riggs testified that, although he did not review this proof of claim before it was filed, it was a true claim.  Then, when confronted at trial with the deed recorded February 8, 2023, and the consideration stated therein, Mr. Riggs acknowledged that it is possible that he does not actually have a claim in this case.

73.    There is no documentation showing that the attorney fees Mr. Riggs paid on behalf of Ms. Morgan were a loan.

74.    Ms. Morgan testified that Mr. Riggs paid her attorney fees to help her, and because he was going to live on the Jones Road Property with her.  Ms. Morgan said she demanded that he treat his payment of her attorney fees as a loan.

75.    Mr. Riggs testified that he paid Ms. Morgan's attorney fees to help her out.  He claimed that Ms. Morgan verbally told him that she would repay him for attorney fees that he paid on her behalf.  However, he did not believe that she had extra assets to pay him because she was living paycheck to paycheck.  Mr. Riggs had no idea how Ms. Morgan could repay him.

76.    The court concludes from the evidence that Mr. Riggs was not making a loan to Ms. Morgan when he paid Ms. Morgan's attorney fees.  Mr. Riggs paid Ms. Morgan's attorney

fees without regard of her willingness and ability to pay him back.  While Ms. Morgan may have expressed a desire to pay Mr. Riggs the money he paid for those attorney fees, that is not the same thing as a loan.

77.    Other than the claims raised in this adversary proceeding, Ms. Morgan's bankruptcy estate has no other assets that the trustee can use to pay creditors.

78.    Ms. Morgan asserts that she has claims against the Perketts that are worth $1.5 million.  Ms. Morgan did not list those claims on her original bankruptcy schedules. Ms. Morgan testified that she told her bankruptcy lawyer about those claims but that he did not put them on her bankruptcy schedules.  The court did not find that testimony credible.

<u>**Analysis of Claims**</u>

**I.    The Trustee's Claims**

In this case, the Trustee alleges fraudulent transfers claims and seeks avoidance and recovery of the transfers for the estate, as well as turnover of the property transferred.

The Trustee alleges that there are essentially two separate fraudulent transfers.  The first is Ms. Morgan's transfer of the $156,742.55 proceeds from the sale of the Jones Road Property to Mr. Riggs some time on or after July 26, 2021.  The second is Ms. Morgan's transfer of the Christmas Valley Property to the Whispering Oaks Farms, LLC, on June 10, 2021, and the subsequent transfer of Ms. Morgan's interest to Mr. Riggs via her relinquishment of her membership interest in the limited liability company and its transfer of the property to Mr. Riggs in February 2023.

**A.    Trustee Has Proven Her Claim for Actual Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a).**

**1.    Legal Standard**

The Trustee asserts a claim for actual fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A).  Section 548(a)(1)(A) provides in relevant part that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . .

made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . indebted."[21]

Because "it is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors," courts "frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud."[22]  Those badges of fraud include "(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer."[23]  To avoid a transfer as actually fraudulent, the Trustee bears the burden of proof by the preponderance of the evidence.[24]

Where a transfer has been avoided under sections 544 or 548, 11 U.S.C. §550(a) authorizes the Trustee to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ."[25] from the initial transferee or any immediate or mediate transferee[26] except for immediate or mediate transferees that take for value, in good faith, and without knowledge of the voidability of the transfer, and their subsequent good faith transferees.[27]

### 2.    Analysis

Ms. Morgan had an interest in the $156,742.55 proceeds from the sale of the Jones Road Property.  Ms. Morgan also had an interest in the Christmas Valley Property, "not as tenants in

---

[21] 11 U.S.C. § 548(a)(1)(A).

[22] *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 805 (9th Cir. 1994), quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254-55 (1st Cir. 1991).

[23] *Id.*

[24] *Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1043, n.8 (9th Cir. 2003); *Marshack v. Hyundai Steel Co. (In re Prime Metals U.S.A., Inc.)*, 2023 WL 8629836 at *8 (BAP 9th Cir. Dec. 13, 2023).

[25] 11 U.S.C. § 550(a).

[26] 11 U.S.C. §§ 550(a)(1)-(2).

[27] 11 U.S.C. §§ 550(b)(1)-(2).

common but with the right of survivorship."[28]   Under Oregon law, this is an *Erickson* deed and gave the parties concurrent life estates with a contingent remainder to the survivor.[29]

Ms. Morgan voluntarily transferred all those interests to Mr. Riggs, directly or indirectly, within two years before she filed bankruptcy.  These transfers were made after the Perketts had obtained their general judgment against Ms. Morgan and while they were seeking recovery of their attorney fees.

Ms. Morgan made all those transfers with actual intent to hinder and delay the Perketts from collecting obligations Ms. Morgan owed to them.  All the badges of fraud mentioned in *Acequia* are present here:  (1) the Perkett's had actual and significant litigation against Ms. Morgan, (2) the transfers were of substantially all of Ms. Morgan's property, as she had no other significant assets and was living paycheck to paycheck, (3) Ms. Morgan was not able to pay her debts, as evidenced by her inability to pay her own state court attorneys, (4) there is a special relationship between Ms. Morgan and Mr. Riggs, as they are domestic partners and have lived together since 2015, and (5) Ms. Morgan has retained the benefit of living on the Christmas Valley Property.

Mr. Riggs was the initial transferee of the $156,742.55 proceeds from the sale of the Jones Road Property.  Under Section 550(a)(1), the Trustee is entitled to avoid the transfer and recover the $156,742.55 value of those proceeds from Mr. Riggs.

Neither Whispering Oaks Farms, LLC, nor Mr. Riggs were good faith transferees for value of Ms. Morgan's interest in the Christmas Valley Property.  If Ms. Morgan's membership

---

[28] Chapter 7 Trustee's Exhibit List, ECF No. 72, Exh. 10, filed Jan. 2, 2026.

[29] *Erickson v. Erickson*, 167 Or. 1, 17-19, 115 P.2d 172, 178-79 (1941).  Ms. Morgan contends that under *In re Domestic P'ship of Branam & Beaver*, 225 Or. App. 630, 202 P.3d 886 (2009), Mr. Riggs owns the property because he paid the entire price for the property.  As set forth in the fact findings above, Mr. Riggs did not pay the entire price for the property.  In any event, the court does not find *Branam & Beaver* to be relevant.  This is not a domestic dissolution action between the owners where the "court may exercise its equitable powers to reach a fair dissolution of the parties' partnership," 225 Or. App. at 636, 202 P.3d at 890, but is instead an action by a bankruptcy trustee to recover property of the estate.  As between the debtor and Mr. Riggs, on one hand, and the trustee acting on behalf of third-party creditors without knowledge of the financial arrangements between debtor and Mr. Riggs on the other hand, the record title should be dispositive.

interest in Whispering Oaks Farms, LLC, was a mistake, as she asserts (but the court does not find credible), then her initial transfer of her interest in the Christmas Valley Property to Whispering Oaks Farms, LLC, was for no value at all as she received nothing in exchange.  If her membership interest was not a mistake (which the court concludes here), then her relinquishment of her membership interest in Whispering Oaks Farms, LLC, was for no value because she received nothing in exchange for that relinquishment.  She also received nothing for Whispering Oaks Farms, LLC's transfer of the Christmas Valley Property to Mr. Riggs.[30]  The court cannot and does not conclude on the evidence presented that Mr. Riggs and Whispering Oaks Farms, LLC, lacked knowledge of Ms. Morgan's apparent intent to keep the Christmas Valley Property from the Perketts or the voidability of the transfers.  Given how extensive and hard-fought the litigation was between Ms. Morgan and the Perketts, involving use of land that Mr. Riggs himself lived on for years during the litigation, the court simply does not believe that Mr. Riggs was unaware of it.  There can be no doubt that Whispering Oaks Farms, LLC, knew what both of its members, Ms. Morgan and Mr. Riggs, knew.  Under Section 550(a)(2), the Trustee is entitled to avoid the transfer of the Christmas Valley Property to Whispering Oaks Farms, LLC, and Mr. Riggs.

### B.    Trustee Has Proven Her Claim for Constructive Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548(a)(2)(B) and 550(a).

#### 1.    Legal Standard

The Trustee asserts a claim for constructive fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).  Section 548(a)(1)(B) provides in relevant part that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer"[31] and if the debtor: "was insolvent on the date that such transfer was made . . . or became insolvent as a

---

[30] The consideration recited in the deed from Whispering Oaks Farms, LLC, to Mr. Riggs makes no sense.  Whisperings Oaks Farms, LLC, had no attorney fee debt, and a transfer by Whispering Oaks Farms, LLC, of its own property could not satisfy any of Ms. Morgan's obligations.
[31] 11 U.S.C. § 548(a)(1)(B)(i).

result of such transfer . . ."[32] or "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . ."[33]  To avoid a transfer as constructively fraudulent, the Trustee bears the burden of proof by the preponderance of the evidence.[34]

The trustee can recover such a transfer under section 550(a).[35]

### 2.    Analysis

Ms. Morgan did not receive anything of value in exchange from Mr. Riggs when she transferred the $156,742.55 proceeds from the sale of the Jones Road Property to Mr. Riggs. Although Ms. Morgan received a membership interest in exchange for her transfer of the Christmas Valley Property to Whispering Oaks Farms, LLC, she did not receive anything of value in exchange for her relinquishing that membership interest to Mr. Riggs' benefit. Ms. Morgan voluntarily transferred all those interests to Mr. Riggs, directly or indirectly, within two years before she filed bankruptcy.

When Ms. Morgan transferred these assets, she knew that she was incurring attorney fee debt (in multiple litigation cases and land use disputes to her own attorney as well as to the Perketts) that was beyond her ability to pay when due.  She had no intention of paying—or ability to pay—her debts to the Perketts, which were due and only increasing as interest accrued.

For the reasons set forth above,[36] under section 550(a)(1), the Trustee is entitled to avoid the transfer and recover the $156,742.55 value of those proceeds from Mr. Riggs, and under section 550(a)(2), the Trustee is entitled to avoid the transfer of the Christmas Valley Property to Whispering Oaks Farms, LLC, and Mr. Riggs.

---

[32] 11 U.S.C. § 548(a)(1)(B)(ii)(I).
[33] 11 U.S.C. § 548(a)(1)(B)(ii)(III).
[34] *Stern*, 345 F.3d at 1043, n.8; *In re Prime Metals U.S.A., Inc.*, 2023 WL 8629836 at *8.
[35] See section I.A.1. *supra*.
[36] See section I.A.2. *supra*.

**C.     Trustee Has Proven Her Claim for Fraudulent Transfer Pursuant to 11 U.S.C. § 544, ORS 95.230, and ORS 95.260.**

**1.      Legal Standard**

The Trustee asserts claims for actual and constructively fraudulent transfers under Oregon state law pursuant to 11 U.S.C. § 544.  Section 544(b)(1) provides in relevant part that "[t]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by . . . a creditor holding an unsecured claim that is allowable under section 502 of this title . . ."[37]  The Perketts hold an unsecured claim in this case.

The state law provisions relied upon by the trustee to avoid the transfers are ORS 95.230 and ORS 95.260.  ORS 95.230 states:

> "(1) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.
> (2) In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:
>> (a) The transfer or obligation was to an insider;
>> (b) The debtor had retained possession or control of the property transferred after the transfer;
>> (c) The transfer or obligation was disclosed or concealed;
>> (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
>> (e) The transfer was of substantially all the debtor's assets;
>> (f) The debtor had absconded;
>> (g) The debtor had removed or concealed assets;
>> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

---

[37] 11 U.S.C. § 544(b)(1).

(i) The debtor was insolvent or became insolvent shortly after the transfer
was made or the obligation was incurred;

(j) The transfer had occurred shortly before or shortly after a substantial
debt was incurred; and

(k) The debtor had transferred the essential assets of the business to a
lienor who had transferred the assets to an insider of the debtor.

(3) A creditor making a claim for relief under this section has the burden of
proving the elements of the claim for relief by preponderance of the evidence."

And, ORS 95.260 states:

"(1) In any action for relief against a transfer or obligation under ORS 95.200
to 95.310, a creditor, subject to the limitations provided in ORS 95.270, may
obtain:

(a) Avoidance of the transfer or obligation to the extent necessary to
satisfy the creditor's claim.

(b) An attachment or other provisional remedy against the asset transferred
or other property of the transferee in accordance with the procedure
prescribed by any applicable provision of any other statute or the
Oregon Rules of Civil Procedure.

(c) Subject to applicable principles of equity and in accordance with
applicable rules of civil procedure:

(A) An injunction against further disposition by the debtor or a
transferee, or both, of the asset transferred or of other property;

(B) Appointment of a receiver to take charge of the asset transferred or
of other property of the transferee; or

(C) Any other relief the circumstances may require.

(2) If a creditor has obtained a judgment on a claim against the debtor and
if the court so orders, the creditor may levy execution on the asset transferred or
its proceeds."

### 2.    Analysis

With respect to the Trustee's claims under ORS 95.230(1)(a), the Trustee has proven that

Ms. Morgan acted with actual intent to hinder and delay the Perketts from collecting obligations

Ms. Morgan owed to them.  The court has considered the factors set forth under ORS 95.230(2)

and nearly all of them are present.  The transfers were made to Whispering Oaks Farms, LLC,

and to Mr. Riggs, who were insiders.  Ms. Morgan retained possession of the Christmas Valley

Property after the transfer.  Ms. Morgan did not disclose the transfer of either the $156,742.55

proceeds from the sale of the Jones Road Property or the Christmas Valley Property.  The

Perketts had sued Ms. Morgan.  The transfers were of substantially all of Ms. Morgan's assets, as

she had no other significant assets and was living paycheck to paycheck.  Ms. Morgan did not

receive reasonably equivalent value from Mr. Riggs.  The timing of the transfers was suspect, as they occurred shortly after the entry of the general judgment in the Jackson County case, then again shortly after the Jackson County court took the attorney fee matter under advisement, and then again shortly after the Perketts were pursuing their fraudulent transfer claims in the Lake County court.  The court does not find this timing to be a mere coincidence.

For the same reasons that the Trustee has proven her claims under section 548(a)(2)(B), she has also proven her claims under ORS 95.230(1)(b).

Under ORS 95.260, the Trustee is entitled to avoid the transfer and recover the $156,742.55 value of those proceeds from Mr. Riggs, and to avoid the transfer of the Christmas Valley Property to Whispering Oaks Farms, LLC, and Mr. Riggs.

### D.      Trustee Has Not Proven Her Claim for Relief Pursuant to 11 U.S.C. § 547(a) and § 550(a).

#### 1.      Legal Standard

The Trustee asserts a claim for a preferential transfer pursuant to 11 U.S.C. § 547(b). Section 547(b) provides in relevant part that "the trustee may . . . avoid any transfer of an interest of the debtor in property . . . to or for the benefit of a creditor . . . for or on account of an antecedent debt . . . made while the debtor was insolvent . . . within 90 days before the date of the filing of the petition; or . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and . . . that enables such creditor to receive more than such creditor would receive if . . . the case were a case under chapter 7 of this title . . . the transfer had not been made; and . . . such creditor received payment of such debt to the extent provided by the provisions of this title."  The Trustee seeks to recover that preferential transfer under 11 U.S.C. § 550(a).

#### 2.      Analysis

The trustee has not proven this claim. There is no credible evidence that Mr. Riggs or Whispering Oaks Farms, LLC, was a creditor of Ms. Morgan, or that Ms. Morgan's transfer to them was on account of an antecedent debt.  Although Ms. Morgan's relinquishment of her membership interest in Whispering Oaks Farms, LLC, was within one year of her bankruptcy,

Ms. Morgan's transfer of the $156,742.55 proceeds from the sale of the Jones Road Property was more than a year before she filed bankruptcy.

### E.    Trustee Has Proven her Claim for Turnover Pursuant to 11 U.S.C. § 542(a).

#### 1.    Legal Standard

Trustee asserts a claim for turnover pursuant to 11 U.S.C. § 542(a).  Section 542(a) provides in relevant part, that "an entity…in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee . . . such property . . . unless such property is of inconsequential value or benefit to the estate."  The debtor has a mandatory duty to turn over property when she files a bankruptcy petition.[38]  Pursuant to 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

#### 2.    Analysis

Ms. Morgan and Mr. Riggs are in possession of the Christmas Valley Property. Ms. Morgan's interest in that property is property of the estate pursuant to 11 U.S.C. § 541(a). Therefore, the trustee is entitled to a judgment requiring that Mr. Riggs and Ms. Morgan immediately turnover Ms. Morgan's interest in the Christmas Valley Property to the estate.

## II.    Affirmative Defenses

### A.    Failure to State a Claim Upon Which Relief Can be Granted.

Both Ms. Morgan and Mr. Riggs assert an affirmative defense of failure to state a claim upon which relief can be granted.  For the reasons set forth above, the Trustee has both properly stated and proved claims for fraudulent transfer under state and federal law.  The Trustee properly stated, but could not prove, her claims for preferential transfer.  The trustee both properly stated and proved her claim for turnover.

### B.    Failure to Seek Relief Against Ms. Morgan

Ms. Morgan asserts an affirmative defense that the complaint seeks no relief against her. While the relief requested for many of the Trustee's claims is directed toward Mr. Riggs, the

---

[38] *California v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996).

court finds that the Trustee has sought relief from Ms. Morgan on the turnover claim, particularly given that fact that she currently occupies the Christmas Valley Property.  To the extent that the Trustee's Second Amended Complaint is not a model of clarity, the court is mindful of the obligation that "[p]leadings must be construed so as to do justice."[39]  The court believed it was clear from the records of this case and the evidentiary presentation that Ms. Morgan had a full and fair opportunity to respond to and defend the Trustee's allegations directed at her.

### C.    Statute of Limitations.

Mr. Riggs asserts an affirmative defense that the claims are barred, in whole or in part, by the applicable statute of limitations.  There is no statute of limitations for turnover claims under section 542(a).[40]  The limitations period for actions under sections 544, 547, and 548 is set forth in 11 U.S.C. § 546(a).  Ms. Morgan's bankruptcy case remains open, has not been closed or dismissed, and no trustee election has occurred.  Therefore, section 546(a)(1)(A) provides that the trustee must commence her action no later than two years after the entry of the order for relief.  The order for relief in a voluntary case is the petition date, in this case March 27, 2023. The Trustee timely commenced this action on September 4, 2024.

### Conclusion

For the reasons set forth above, the court concludes that the Trustee is entitled to a judgment (a) avoiding the transfer and providing a money judgment in favor of the estate and against Mr. Riggs for the $156,742.55 value of the proceeds of the sale of the Jones Road Property, (b) avoiding the transfer of the Christmas Valley Property to Whispering Oaks Farms, LLC, and Mr. Riggs, and re-vesting Ms. Morgan's interest in the Christmas Valley Property in the estate, and (c) requiring that Mr. Riggs and Ms. Morgan immediately turnover Ms. Morgan's interest in the Christmas Valley Property to the Trustee to administer in the estate.

Counsel for the trustee should circulate and upload an appropriate judgment.

# # #

---

[39] Fed. R. Civ. P. 8(e), made applicable by Fed. R. Bankr. P. 7008.
[40] *Girardi v. Miller (In re Keese)*, 671 F. Supp. 3d 1053, 1061 (C.D. Cal. 2023).